UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CODY THIBODEAUX | CIVIL ACTION |
| VERSUS | |
| STATE OF LOUISIANA, ET AL. | NO. 24-00388-BAJ-SDJ |

### RULING AND ORDER

Before the Court is Defendants' **Motion For Summary Judgment (Doc. 19)**. The Motion is opposed. (Doc. 22). Plaintiff filed a Reply Brief. (Doc. 24). For the following reasons, Defendants' Motion (Doc. 19) is **DENIED**.

### I. PROCEDURAL HISTORY

Plaintiff, an incarcerated person at Louisiana State Penitentiary ("LSP"), alleges that he was subject to excessive force by LSP officials, forming the basis for this case. (Doc. 10).

On July 29, 2021, Plaintiff filed suit in the 20th Judicial District Court, West Feliciana Parish, State of Louisiana. (Doc. 1-5 at 8). On May 16, 2024, Defendants removed the case to this Court, alleging federal question jurisdiction. (Doc. 1 at ¶ 5). Defendants allege that they were served with Plaintiff's Petition on April 18, 2024. (*Id.* at ¶ 8).

Once in this Court, Plaintiff filed an Amended Complaint. (Doc. 10). Plaintiff's Complaint asserts the following claims: (1) violation of civil rights under 42 U.S.C. § 1983; (2) negligence; (3) respondeat superior; and (4) costs and attorneys'

fees. (*Id.*). Named Defendants are the Louisiana Department of Public Safety and Corrections ("LDPSC") and Sargeant Jonathan Emery.[1]

Now, Defendants move for summary judgment, arguing that Emery is entitled to qualified immunity regarding Plaintiff's Section 1983 claim. (Doc. 19). Defendants further assert that Plaintiff's state law claims fail as a matter of law. (*Id.*). For the following reasons, Defendants' Motion (Doc. 19) is **DENIED**.

## II.   FACTS

On October 20, 2020, Sargeant Jonathan Emery placed Plaintiff, an incarcerated person at LSP, in wrist restraints that were fastened to a lap belt and leg irons. (Doc. 19-2 at ¶ 2; Doc. 22-17 at ¶ 2). Emery then removed Plaintiff from yard pen #5. (Doc. 19-2 at ¶¶ 1, 3; Doc. 22-17 at ¶¶ 1, 3). Thereafter, Emory and Plaintiff engaged in a physical altercation.

The parties dispute key facts surrounding the altercation, relying on the same video evidence. The video, submitted to the Court through a conventional filing, is thirty minutes and six seconds long, and shows footage from four camera angles recording activity in different areas at LSP.[2] (Doc. 20; Doc. 30). Two of the four camera angles show video footage relevant to Plaintiff's claims. The video does not contain audio.

---

[1] The Court previously dismissed Plaintiff's claims against Defendant Randy Lavespere. (Doc. 7).

[2] Due to CM/ECF limitations, the video is not publicly available on the Court's docket.

Along with their Motion, Defendants provided Emery's description of the altercation, dated October 22, 2020, which states:

> **DESCRIPTION OF INCIDENT (ATTACH ADDITIONAL INFORMATION IF NEEDED)**
>
> On the above date and approximate time while I, Sergeant Jonathan Emery #576792 from the Recreation Yard, I observed that his waist restraints were hanging loosely from his waist. I gave Offender Thibodeaux a direct verbal order to stop so that I could fit his restraints on properly. Offender Thibodeaux flatly refused all orders given and continued pulling away from my escort stating directly to me, "Fuck that. You ain't gotta do all that!" I gave Offender Thibodeaux several more direct verbal orders to stop to which he still flatly refused all orders given and continued pulling away from my escort. At which time, I took Offender Thibodeaux to the ground. I continued to hold Offender Thibodueaux on the ground to prevent injury to myself. At which time, Offender Dennis Minor #518772 entered the rear exit door from the Recreation Yard and began repeatedly punching me in my face and nose with closed fists. At which time, Major Shane Worsham and Lieutenant Oscar Coney arrived and took control of the situation. I was relieved of my duties and sent to the Treatment Center to be seen by Medical Personnel for injuries to my face and nose. I was advised by Major Shane Worsham that I could go to the West Feliciana Parish Sheriff's Office and press charges against Offender Minor for assault on a Correctional Officer. Assistant Warden Chad Darbonne, Lieutenant Colonel Willard Gauthier, Assistant Warden Jeremy McKey, and Assistant Warden Tim Delaney were all notified of this incident. This is for your information and further handling.
>
> *Jonathan Emery*       10-22-20       6:20 Am
> REPORTING OFFICER      DATE COMPLETED   TIME COMPLETED

Along with his Opposition Brief, Plaintiff provided a Declaration dated August 27, 2025, attesting to what he believes the video shows. (Doc. 22-1). Plaintiff's description of the altercation is as follows:

> 15:07:27-08:19 [Plaintiff] walking in door—Guard hand around [Plaintiff]. Guard slams [Plaintiff] to the floor and punch him. Female guard enters and stands over the guard who holding [Plaintiff] to the floor. Emory has one hand around [Plaintiff's] throat and he is punching [Plaintiff].
>
> 15:08:19 Another inmate, who had jumped the intervenes by attacking Emory trying to pull him off of [Plaintiff].
>
> 15:08:31 Three guards enter the building as the inmate who jumped the fence enters and jumps on the guard who is holding [Plaintiff] down. The guard separate the inmate and takes [Plaintiff] into another room.
>
> 15:08:32-44 Major Shane Worsham slams [Plaintiff] to the floor and put his knee in [Plaintiff's] neck to hold him there. Officer Magee makes contact with [Plaintiff.]
>
> 15:08:52 Magee is holding [Plaintiff] while Minor is being detained.
>
> 15:09:33 [Plaintiff] with Magee but Emory is coming back from kitchen

3

> area approaching[.]
>
> 15:09:38 [Plaintiff] turns around talking to Emory who is approaching. Magee tries to hold Emory back as Emory enters and tries to get at [Plaintiff]. Guard is in between the two trying to hold him back while they exchange words.
>
> 15:09:47 Emory backs off as Magee holds [Plaintiff] against a cell to shelter him from a further attack[.]

(Doc. 22-1 at 1–2).

The Court's review of the video does not provide clear answers as to whose version of events is accurate. Approximately five minutes and twenty-six seconds into the video, Plaintiff appears walking through a door, entering a building at LSP from the outside. The video footage shows that the altercation occurred almost immediately after Plaintiff entered the building. The video shows Emery tackling Plaintiff to the ground. It is unclear from the video what led to the incident, and again, the video lacks audio.

The parties agree to the following facts, such that the Court considers these facts undisputed for purposes of summary judgment. Plaintiff confirmed that Emery restrained him prior to removing him from the yard pen. (Doc. 19-2 at ¶ 28; Doc. 22-17 at ¶ 28). Emery placed Plaintiff into side restraints that secured Plaintiff's wrists to his sides. (Doc. 19-2 at ¶ 29; Doc. 22-17 at ¶ 29). Emery secured Plaintiff's ankles with leg irons. (Doc. 19-2 at ¶ 30; Doc. 22-17 at ¶ 30). The leg irons were not connected to Plaintiff's waist belt. (Doc. 19-2 at ¶ 31; Doc. 22-17 at ¶ 31). Plaintiff's leg irons were separated by approximately two feet of chain. (Doc. 19-2 at ¶ 32; Doc. 22-17 at ¶ 32). The leg restraints allowed Plaintiff to walk. (Doc. 19-2 at ¶ 33;

4

Doc. 22-17 at ¶ 33).

Plaintiff and Emery greeted each other while Plaintiff was being restrained in the pen. (Doc. 19-2 at ¶ 34; Doc. 22-17 at ¶ 34). There were no discussions between Plaintiff and Emery on the way from the yard pen to the building door. (Doc. 19-2 at ¶ 35; Doc. 22-17 at ¶ 35). The incident occurred near the door to the yard. (Doc. 19-2 at ¶ 46; Doc. 22-17 at ¶ 46).

Plaintiff testified that he complied with Emery's orders to stop walking. (Doc. 19-2 at ¶ 37; Doc. 22-17 at ¶ 37). A padlock was located on the back of Plaintiff's waist belt. (Doc. 19-2 at ¶ 39; Doc. 22-17 at ¶ 39). Emery did not tell Plaintiff what he was trying to do with the lock. (Doc. 19-2 at ¶ 40; Doc. 22-17 at ¶ 40).

Major Shane Worsham, Lieutenant Oscar Coney, and Sargeant Tyreek Magee responded to the altercation. (Doc. 19-2 at ¶ 15; Doc. 22-17 at ¶ 15). During their response, Worsham forced Plaintiff to the ground and placed his knee in Plaintiff's neck. (Doc. 19-2 at ¶ 50; Doc. 22-17 at ¶ 50). Magee helped Plaintiff to his feet. (Doc. 19-2 at ¶ 51; Doc. 22-17 at ¶ 51).

Lieutenant Freda Gee escorted Plaintiff to the treatment center following the incident. (Doc. 19-2 at ¶ 54; Doc. 22-17 at ¶ 54). Plaintiff arrived at the treatment center ambulatory. (Doc. 19-2 at ¶ 24; Doc. 22-17 at ¶ 24). Plaintiff underwent medical evaluation at the treatment center. (Doc. 19-2 at ¶ 23; Doc. 22-17 at ¶ 23). Medical providers observed redness to Plaintiff's right arm, wrist, fingers, and ankles. (Doc. 19-2 at ¶ 26; Doc. 22-17 at ¶ 26).

Emery never came into physical contact with Plaintiff again. (Doc. 19-2 at ¶ 53;

Doc. 22-17 at ¶ 53).

### III. LEGAL STANDARD

A district court should "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Funches v. Progressive Tractor & Implement Co., L.L.C.*, 905 F.3d 846, 849 (5th Cir. 2018) ("This occurs when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

For issues on which the movant bears the burden of proof at trial, they "must come forward with evidence which would entitle [them] to a directed verdict if the evidence went uncontroverted at trial." *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with evidence establishing a genuine dispute of material fact, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

Where the nonmovant bears the burden of proof at trial, the moving party must offer evidence that undermines the nonmovant's claim or point out the absence of evidence supporting essential elements of the claim. *See Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 885 (1990). Once the movant shows entitlement to judgment as a matter of law, the nonmovant must bring forward evidence to create a genuine issue of material fact. *Giles v. Gen. Elec. Co.*,

6

245 F.3d 474, 493 (5th Cir. 2001). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

## IV.  DISCUSSION

Defendants ask the Court to issue summary judgment in its favor on all of Plaintiff's claims. First, Defendants argue that Emery is entitled to qualified immunity regarding Plaintiff's excessive force claim brought under Section 1983. (Doc. 19). Second, Defendants assert that Plaintiff's state law claims fail as a matter of law. (*Id.*). For the following reasons, Defendants' Motion is **DENIED**.

### A. Qualified Immunity.

Defendants assert the defense of qualified immunity to Plaintiff's Eighth Amendment excessive force claim brought under Section 1983. The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Ezell v. Seal*, No. CV 23-1514-SDD-EWD, 2025 WL 3124046, at *4 (M.D. La. Nov. 7, 2025).

"In determining whether an official enjoys immunity, [courts] ask (1) whether the plaintiff has demonstrated a violation of a clearly established federal constitutional or statutory right and (2) whether the official's actions violated that right to the extent that an objectively reasonable person would have known." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006) (citing *Hope v. Pelzer*,

7

536 U.S. 730 (2002)). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

This inquiry is undertaken in light of the specific context of the case, not as a broad, general proposition. *Berry v. Sanders*, No. CV 17-318-BAJ-EWD, 2020 WL 1034627, at *2 (M.D. La. Feb. 14, 2020), *report and recommendation adopted*, No. CV 17-00318-BAJ-EWD, 2020 WL 1033654 (M.D. La. Mar. 3, 2020). This Court has emphasized: "Corrections officers are faced with myriad situations where they must exercise discretion, including situations where they must choose whether to exercise force against a prisoner. When force is used, a corrections officer must also exercise discretion to determine the appropriate amount of force." *Id.* (internal citations omitted).

Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the purpose of causing harm rather than in a good faith effort to maintain or restore discipline. *Berry*, 2020 WL 1034627, at *2 (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Berry*, 2020 WL 1034627, at *2 (citing *Wilkins*, 559 U.S. at 38). The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes

from constitutional recognition *de minimis* uses of physical force, provided that such force is not "repugnant to the conscience of mankind." *Berry*, 2020 WL 1034627, at *2 (citing *Hudson*, 503 U.S. at 10).

Factors to be considered in determining whether an alleged use of force is excessive include the extent of injury sustained, if any; the need for the application of force; the relationship between the need for force and the amount of force utilized; the threat reasonably perceived by prison officials; and any efforts made to temper the severity of a forceful response. *Berry*, 2020 WL 1034627, at *2 (citing *Hudson*, 503 U.S. at 7). The law governing excessive force is clearly established; thus, whether Emery is entitled to qualified immunity turns on the reasonableness of his conduct. *See Berry*, 2020 WL 1034627, at *2.

Here, Defendants argue that Emery's actions were reasonable because he was simply attempting to restore discipline. (Doc. 19-1 at 12). Defendants argue that Plaintiff disobeyed Emery's commands, escaped Emery's grasp, then turned and confronted Emery in a threatening manner. (*Id.* at 14). Defendants further assert that "Plaintiff's defiance and threatening movements established the need for force." (*Id.*).

Plaintiff tells a different story. According to Plaintiff, Emery attacked him unprovoked and "without warning" by "grabbing him[,] lifting him[,] slamming him to the ground and then jumping on him holding him by the throat and punching him in the face multiple times." (Doc. 22 at 11). Further, Plaintiff asserts that he "was in full restraints unable to defend himself." (*Id.*).

9

After reviewing the record before the Court, including the video evidence, the Court finds that a genuine issue of material fact precludes summary judgment on the issue of qualified immunity. Based on the video evidence and the parties' conflicting testimony regarding the altercation, and because the Court is unable to ascertain the full context of the altercation from the video, the Court cannot determine whether Emery is entitled to qualified immunity as a matter of law.[3] It will be for the finder of fact to assess the credibility of witnesses to determine the reasonableness of Emery's actions at the time of the physical altercation at issue. *See Cole v. Carson*, 935 F.3d 444, 457 (5th Cir. 2019), *as revised* (Aug. 21, 2019) (affirming the district court's denial of summary judgment on an excessive force claim, finding that "genuine disputes of fact regarding . . . entitlement to qualified immunity remain."); *see also Kelly v. Stassi*, 587 F. Supp. 3d 409, 426 (M.D. La. 2022) (Dick, C.J.) (As in *Cole*, the existence of competing factual narratives in this case means that "the full reach of qualified immunity gives way to a trial, the first point at which its application is determinable."); *Rios v. Perez*, 777 F. Supp. 3d 727, 749 (W.D. Tex. 2025) ("Based on the video evidence and the parties' conflicting testimony about the events that preceded the recordings, the Court cannot determine qualified immunity as a matter of law."); *Bruce v. Ellis*, No. 3:12-CV-1683-L, 2013 WL 1091241, at *10 (N.D. Tex. Mar. 15, 2013) ("As [plaintiff] has raised a genuine dispute of material fact regarding the objective reasonableness of Ellis's conduct, summary judgment is not

---

[3] The Court notes that there is a separate Motion pending before the Court in which Plaintiff requests an adverse presumption for the spoliation of video evidence showing other camera angles of the altercation between Emery and Plaintiff, which Plaintiff asserts would show the full story.

10

appropriate."); *Ramirez v. Martinez*, 716 F.3d 369, 374 (5th Cir. 2013) ("The contents of the video are too uncertain to discount [plaintiff's] version of the events.").

Accordingly, Defendants' **Motion for Summary Judgment (Doc. 19)** regarding qualified immunity is **DENIED**.

### B. State Law Claims.

For similar reasons, Defendants' Motion for Summary Judgment regarding Plaintiff's state law claims—negligence and vicarious liability—will also be denied. Defendants ask the Court to dismiss Plaintiff's negligence claim because "the video evidence and Plaintiff's corroborating testimony establish that [] Emery acted reasonably under the totality of circumstances[.]" (Doc. 19-1 at 19). Because the Court has already found that genuine issues of material fact exist regarding the reasonableness of Emery's actions, Defendants' Motion will be **DENIED** in this respect.[4]

As for Plaintiff's vicarious liability claim, Defendants argue that because Plaintiff's negligence claim against Emery fails as a matter of law, no liability can be legally imputed to LDPSC through a theory of vicarious liability. (*Id.* at 20). Because the Court has denied Defendants' Motion for Summary Judgment regarding Plaintiff's negligence claim, Defendants' Motion regarding vicarious liability will also be denied.

---

[4] Defendants dedicate two sentences of their Motion to requesting summary judgment on Plaintiff's negligence claim alleging that Emery failed to obtain medical treatment for Plaintiff following the altercation. (Doc. 19-1 at 19). Plaintiff similarly glosses over this issue in his Opposition Brief. (Doc. 22). The Court is simply without sufficient information to rule on this issue as a matter of law.

11

Accordingly, Defendants' **Motion for Summary Judgment (Doc. 19)** regarding Plaintiff's state law claims is **DENIED**.

V.   **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendants' **Motion For Summary Judgment (Doc. 19)** is **DENIED**.

Baton Rouge, Louisiana, this 21ST day of January, 2026

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**